UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:10-cr-40054-JES-JAG-2 |
| | ) | |
| JOSHUA R. DONAVAN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Joshua R. Donavan's Motion (Doc. 81) for Compassionate Release, the United States' Response (Doc. 85), the United States' Supplemental Response (Doc. 90), and Defendant's Reply (Doc. 93). For the reasons that follow, the Defendant's Motion (Doc. 81) is DENIED.

### BACKGROUND

On December 9, 2011, Defendant was sentenced to 240 months of imprisonment for conspiracy to distribute oxycodone and methadone and distribution of oxycodone. His projected release date is September 25, 2027. He is currently serving his sentence in the prison camp at FCI Yazoo City Low in Mississippi. In light of the ongoing COVID-19 pandemic, Defendant moves for an order reducing his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), often referred to as the compassionate release statute. Defendant submits he is willing to accept any modifications to the conditions and duration of supervised release, such as home confinement, ankle monitoring, or increased drug testing. The United States initially asked the Court to deny Defendant's Motion for failure to exhaust administrative remedies, or alternatively, to deny the request on the merits. Doc. 85, at 1. In its Supplemental Response, the

United States concedes Defendant did exhaust his administrative remedies but maintains the Motion should be denied on the merits. Doc. 90, at 2.

**COVID-19 Background**

COVID-19 is a new "respiratory disease spreading from person to person." Situation Summary, Ctrs. for Disease Control and Prevention ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html#background (last updated Apr. 19, 2020). The current global pandemic of COVID-19 "poses a serious public health risk." *Id.* "COVID-19 can cause mild to severe illness" with the "most severe illness occur[ing] in adults 65 years and older and people of any age with serious underlying medical problems." *Id.*

**Defendant's Health**

Defendant is 29 years old and suffers from asthma, which is managed by the use of an inhaler. Doc. 81, at 7, 9. Defendant also suffers from high cholesterol and headaches, which appear to be well-managed by prescription medications. Doc. 85, at 3. On April 6, 2020, Defendant was deemed a potential asymptomatic person and placed in quarantine for possible exposure to COVID-19. *Id.* at 21. Medical personnel saw Defendant and took his temperature approximately 26 times between April 1, 2020, and May 7, 2020, and medical personnel used the "Coronavirus Disease 2019 (COVID-2019) Inmate Screening Tool" to assess Defendant approximately 20 times from early April through May of 2020. *Id.*

**COVID-19 in the Bureau of Prisons**

The CDC has recognized correctional facilities face unique challenges in controlling the spread of COVID-19. Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited May 19,

2020). For instance, because incarcerated "persons live, work, eat, study, and recreate within congregate environments," there is a heightened "potential for COVID-19 to spread once introduced." *Id.* Recognizing this, the Bureau of Prisons ("BOP") has modified operations in all facilities, by, for example, suspending social and legal visits, limiting internal movement of inmates, suspending staff travel, and screening staff and inmates. BOP Implementing Modified Operations, BOP, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 19, 2020).

Notwithstanding these efforts, inmates and staff at various BOP institutions have tested positive for COVID-19. FCI Yazoo City Low, Defendant's institution, is a low-security facility with an adjacent minimum-security satellite camp. *See* FCI Yazoo City Low, BOP, https://www.bop.gov/locations/institutions/yaz/ (last visited May 19, 2020). At FCI Yazoo City Low, there are currently 16 inmates and 6 staff members with known active cases of COVID-19; however, the BOP does not identify how many of these individuals are in the low-security facility as opposed to the satellite camp. *See* COVID-19 Coronavirus, BOP, https://www.bop.gov/coronavirus/ (last visited May 21, 2020) (scroll down to the COVID-19 Cases section, then click on "Full breakdown and additional details"). The numbers may be greater due to limited testing. There are no reported deaths at this institution due to COVID-19, and 87 inmates and 2 staff members have recovered. *Id.*

## LEGAL STANDARD

"[A] judgment of conviction that includes . . . a sentence [of imprisonment] constitutes a final judgment" that can be modified in only certain enumerated circumstances. 18 U.S.C. § 3582(b). As relevant here:

> [a] court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

> defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable if it finds that (i) extraordinary and compelling reasons warrant such a reduction

and that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). "The defendant has the burden to show he is entitled to a sentence reduction." *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *cf. United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

## DISCUSSION

Defendant contends he should be released pursuant to § 3582(c)(1)(A)(i) because his asthma places him at a heightened risk of serious illness and death from COVID-19. Doc. 81, at 9. Defendant argues FCC Yazoo City, which includes a high-security penitentiary, a medium-security facility, and a low-security facility with an adjacent minimum-security camp, has "among the most severe outbreaks" of COVID-19 at any BOP facility. *Id.* at 10. Defendant states it is impossible to effectively observe social distancing practices or self-quarantine due to the dormitory-style layout of the camp where he is housed. Additionally, Defendant argues the Court should consider the harshness of the original sentence, his lack of significant criminal history, and his demonstrated rehabilitation and good conduct after nearly 120 months in custody. *Id.* at 24. If released, Defendant plans to live with his fiancé, who has two jobs and owns a home in Moline, Illinois. *Id.*

**Exhaustion**

Section 3582(c)(1)(A) contains an exhaustion requirement: before a defendant can bring his own motion, he must ask the warden of his facility to bring such a motion. If thirty days pass

without a response, he can file a motion in court. *Id.* If, before that time, the BOP declines to bring such a motion, he must fully exhaust all administrative appeals before filing a motion in court himself. *Id.*

Defendant claims he requested a sentence modification from the BOP by submitting a Form BP-8 to his unit team on either March 28, 2020, or March 29, 2020, and the unit team did not respond. Doc. 81, at 3 n.2. Defendant submitted a second request to the unit team on April 14, 2020, which was denied. *Id.* Defendant claims he appealed the unit team's denial to the Warden on Form BP-9 on April 15, 2020. *Id.*

The United States initially retorted that the BOP could not locate any record of Defendant seeking administrative relief for a sentence reduction. Doc. 85, at 3. If Defendant had submitted a BP-9, the United States asserted it would be logged in the SENTRY database, and no such record existed for Defendant at the time it filed the response to the motion. *Id.* at 18. The United States submitted a supplemental response on May 18, 2020, in which it disclosed that the BOP had provided new information about Defendant's efforts to exhaust administrative remedies. Doc. 90, at 2. Specifically, BOP records show Defendant sent an email to the unit team on April 11, 2020, requesting home confinement. *Id.* On April 14, 2020, Defendant submitted a BP-8 requesting compassionate release that was denied by his Correctional Counselor the following day. *Id.* Defendant subsequently filed a BP-9 to appeal the denial of the BP-8. *Id.* The Administrative Remedy Clerk received the BP-9 on April 17, 2020; however, the BP-9 was not entered into the SENTRY system until May 14, 2020. *Id.* As a result of the new information from the BOP, the United States concedes the issue of exhaustion.

**Merits**

Defendant argues he has shown extraordinary and compelling reasons to warrant a sentence reduction because of his asthma and FCI Yazoo City Low's inability to provide a safe

5

environment during this global pandemic. D. 81, at 11. The United States argues the Motion fails on its merits because Defendant has not established "extraordinary and compelling reasons" to support a sentence reduction within the meaning of § 3582(c)(1)(A) and the Sentencing Commission's policy statement, and the district court lacks the authority to classify the proffered medical reasons for Defendant's release as "extraordinary and compelling." Doc. 85, at 17. The United States also argues Defendant has not met his burden to show a reduction is warranted in light of the relevant § 3553(a) factors. *Id.*

The compassionate release statute directs the Court to make three considerations: 1) whether extraordinary and compelling reasons warrant a sentence reduction; 2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and 3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).

The Sentencing Guideline's policy statement defines what constitutes extraordinary and compelling reasons to warrant a sentence reduction. *See* U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). Application notes explain the medical condition of the defendant (i.e., if he suffers from a terminal illness or a serious physical or medical condition that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover"), his age (i.e., if he is 65 and declining in health and has served a large portion of his sentence already), or his family circumstance (i.e., if the caregiver for his minor children dies or becomes incapacitated) can constitute extraordinary and compelling reasons warranting a sentence reduction. *Id.* § 1B1.13 cmt. n.1(A)–(C).

Previously § 3582(c)(1)(A) allowed only the BOP to bring a motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 2, 2002 through Dec. 20, 2018). The

Sentencing Commission has not updated its policy statement to reflect that a defendant can make his own motion for a sentence reduction. Some courts have held that this means there is currently no policy statement with which sentencing reductions under § 3582(c)(1)(A) must be consistent. *See, e.g.*, *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020). This Court has previously adopted this approach. *See United States v. Seggerbruch*, No. 15-cr-20034, ECF Doc. 113 (C.D. Ill. May 15, 2020); *United States v. Brooks*, No. 07-20047, ECF Doc. 67 (C.D. Ill. May 15, 2020). Thus, a court may find that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. N.1(A)-(C), and without the BOP's motion or express finding. *See, e.g., Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493 at *6.

This Court has previously stated, "the mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, No. 12-cr-20050, at ECF Doc. 41 at p.5 (C.D. Ill. May 12, 2020). However, the Court also opined, "[p]erhaps a prisoner could satisfy the extraordinary and compelling reasons requirement by showing his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id.* at 5-6.

Here, Defendant has not met his burden to establish that extraordinary and compelling reasons justify his release from prison. When Defendant filed the instant Motion on May 7, 2020, there were 50 inmates and 4 staff members who had active cases of COVID-19 at FCI Yazoo City Low. Doc. 81, at 10. As of May 21, 2020, there are 16 inmates and 6 staff members who have active cases of COVID-19. There are 87 inmates and 2 staff members who have recovered. The fact that active cases among inmates have dropped by two-thirds since the Motion was filed

suggests this institution has quelled the outbreak and Defendant is not at a particularly high risk of becoming infected.

Additionally, Defendant's medical records are evidence of the efforts at FCI Yazoo City Low to contain COVID-19. On April 6, 2020, Defendant was deemed a potential asymptomatic person and placed in quarantine for possible exposure to COVID-19. Doc. 85, at 21. The institution has implemented the use of a "Coronavirus Disease 2019 (COVID-2019) Inmate Screening Tool" and Defendant was assessed using this screening measure approximately 20 times from early April through May 2020. *Id.* Defendant saw medical personnel and had his temperature taken 26 times between April 1, 2020, and May 7, 2020. *Id.* In addition to these medical visits for COVID-19 screening, Defendant has had regular medical visits for care of his chronic conditions, including asthma.

Although asthma is a risk factor for COVID-19 complications, Defendant does not allege his condition is particularly severe. In fact, when Defendant saw medical personnel in March 2019 for a chronic care visit, he said his last asthma attack was in 2015 and that he was doing well and using the inhaler infrequently. Doc. 85, at 21. When he saw medical personnel again in October 2019, Defendant was asked about his asthma and again he reported he was doing well and using his inhaler "very infrequently." *Id.* at 22. Considering the Defendant's medical records, the downward trend in active COVID-19 cases at FCI Yazoo City Low, and the actions taken by the BOP to suppress an outbreak at this institution, the Court does not believe Defendant has established an extraordinary and compelling reason for a sentence reduction.

The § 3553(a) factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," *id.* § 3553(a)(2)(A); and "the need for the sentence imposed to

8

afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B).

The United States argues a sentence reduction would not be consistent with the § 3553(a) factors because Defendant failed to demonstrate he is not a danger to the safety of the community. Doc. 85, at 25. Focusing only on Defendant's conduct before his conviction, the United States argues a sentence reduction would "deprecate the seriousness of the defendant's offense, diminish respect for the law, and result in disparate sentences between like-defendants." *Id.* at 26.

Defendant argues a sentence of time served is sufficient to accomplish the purposes of sentencing and the Court must consider post-offense developments when applying the § 3553(a) factors. Doc. 81, at 21. He submits, "the overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents." *Id.* Defendant says a just punishment does not include exposure to a life-threatening illness and an inability to protect oneself because of the conditions of confinement. *Id.* Additionally, Defendant's conduct while in BOP custody for nearly 10 years demonstrates he has matured and is not a danger to the community. *Id.* at 22. Defendant began his sentence at a medium-security facility and has steadily moved to facilities with lower security classifications. Doc. 81, at 7. He obtained his graduate equivalent degree ("GED"), participated in drug education classes, and acted as an instructor in an anger management course. *Id.* He currently works in the commissary at FCC Yazoo City. *Id.* at 8. Defendant submits he is not yet eligible for many of the BOP's vocational offerings or its residential drug treatment program because those programs are reserved for inmates nearer to their release dates. *Id.* at n.10.

Finally, Defendant argues his original sentence was disproportionately harsh. *Id.* at 23. Defendant points to his lack of criminal history, with only one conviction for distribution of cannabis counting towards his guideline determination. *Id.* He claims his total offense level,

9

which was calculated at 37, overstates his individual moral culpability in the accidental overdose that resulted in death. *Id.* At his sentencing, the Court noted Defendant's sentence was already determined by Congress and the Court did not have the authority to go below the mandatory minimum. *Id.* at 4-5. Defendant was sentenced to the custody of BOP for 240 months and his projected release date is currently September 25, 2027.

The Court commends Defendant's good conduct in BOP custody and his attempts to better himself through participation in programming. The Court also recognizes that because of changes in the law, Defendant may have received a lesser sentence if he were sentenced today. However, the "extraordinary and compelling circumstances" requirement and the 3553(a) factors are separate elements. Regardless of which direction the 3553(a) factors weigh, the defendant's Motion is denied because he failed to establish "extraordinary and compelling circumstances" justifying his release. Accordingly, the Court denies Defendant's request for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 81) for Compassionate Release is DENIED.

Signed on this 26th day of May, 2020.

                                                                    s/James E. Shadid
                                                                    James E. Shadid
                                                                    United States District Judge